# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00069-CV

**Harlingen Family Dentistry, P.C.; and Trueblood Dental Associates, P.A., Appellants**

**v.**

**Texas Health and Human Services Commission and Office of the Inspector General, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
NO. D-1-GN-13-002402, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

---

## O P I N I O N

Harlingen Family Dentistry, P.C. and Trueblood Dental Associates, P.A. (collectively, the Dental Groups) filed suit in Travis County district court challenging certain rules adopted by the Texas Health and Human Services Commission (HHSC). *See* Tex. Gov't Code § 2001.038 (permitting challenge to validity or applicability of agency rule). The challenged rules permit HHSC and its Office of Inspector General (OIG) to impose a payment hold against a Medicaid provider in certain circumstances. *See* 1 Tex. Admin. Code § 371.1709(a)(2), (3), (4) (2012) (Tex. Health & Human Servs. Comm'n, Payment Hold). The Dental Groups also challenged a rule permitting the OIG to retain funds that were accumulated during a payment hold even after the hold has been terminated and to use those funds to offset any monies that may be determined to be owed as a result of an ongoing investigation of the provider. *Id.* § 371.1709(e)(2). After the trial court rendered

judgment that the challenged rules were valid, the Dental Groups perfected this appeal. We will reverse the trial court's judgment and render judgment that the challenged rules are not valid.

## ANALYSIS

In their sole issue on appeal, the Dental Groups contend the trial court erred in finding that the challenged administrative rules are a valid exercise of HHSC's statutory rulemaking authority. We presume that an agency rule is valid, and the party challenging the rule has the burden of demonstrating its invalidity. *See Texas Ass'n of Psychological Assocs. v. Texas State Bd. of Exam'rs of Psychologists*, 439 S.W.3d 597, 603 (Tex. App.—Austin 2014, no pet.). To establish a rule's facial invalidity, the challenger must show that the rule (1) contravenes specific statutory language; (2) is counter to the statute's general objectives; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See Ware v. Texas Comm'n on Law Enforcement Officer Standards & Educ.*, No. 03-12-00740-CV, 2013 WL 2157244, at *2 (Tex. App.—Austin May 16, 2013, no pet.) (mem. op.); *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied). An agency's rules must comport with the agency's authorizing statute. *See id.* A state administrative agency has only the authority expressly provided by statute or necessarily implied in order to carry out the express powers the legislature has given it. *See Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315 (Tex. 2001); *Public Util. Comm'n of Tex. v. GTE-Southwest, Inc.*, 901 S.W.2d 401, 407 (Tex. 1995). An agency may not exercise what is effectively a new power on the theory that such exercise is expedient for the agency's purposes. *GTE Southwest*, 901 S.W.2d at 407.

2

The Dental Groups contend that HHSC exceeded its statutory authority by promulgating the challenged rules permitting certain pre-notice payment holds. The dispute, therefore, turns principally on the construction of a statute, a question of law that we review de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). Our primary objective in construing statutes is to give effect to the legislature's intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). The plain meaning of the text is the best expression of legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or unless the plain meaning would lead to absurd or nonsensical results that the legislature could not have intended. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code § 311.011 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). We look to the entire act in determining the legislature's intent with respect to a specific provision. *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 190 (Tex. 1981); *Northwest Austin Mun. Util. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 828 (Tex. App.—Austin 2008, pet. denied). The doctrine of unius est exclusio alterius has long been recognized in this state: "[I]t is a settled rule that the express mention or enumeration of one person, thing, consequence or class is equivalent to an express exclusion of all others." *Johnson v. Second Injury Fund*, 688 S.W.2d 107, 108-09 (Tex. 1985). Although the doctrine is not an absolute rule, it can be helpful in determining legislative intent. *Mid-Century Ins. Co. v. Kidd*, 997 S.W.2d 265, 274 (Tex. 1999). We believe it is helpful in the present case.

### *The Challenged Rules*

The first set of challenged rules purports to grant HHSC and the OIG authority to impose a pre-notice payment hold on providers under certain circumstances. The Dental Groups argue that the rules exceed the limited authority the legislature granted HHSC to impose such payment holds on a Medicaid provider's reimbursement claims for services provided. Specifically, the Dental Groups maintain that because the challenged rules purport to permit a payment hold in instances that do not involve evidence of fraud by the provider, they exceed HHSC's statutory authority and therefore are invalid. The issue in this case, then, reduces to whether HHSC has the authority to adopt rules permitting the OIG to impose a pre-notice payment hold on a Medicaid provider for a program violation that does not involve evidence of or allegations of fraud.

When the challenged rules were promulgated in 2005, two statutes expressly authorized a pre-notice hold on payment to a Medicaid provider. Government Code section 531.102(g)(2) provided:

> In addition to other instances authorized under state or federal law, the [OIG] *shall impose without prior notice a hold on payment of claims* for reimbursement submitted by a provider *to compel production of records or when requested by the state's Medicaid fraud control unit*, as applicable. The office must notify the provider of the hold on payment not later than the fifth working day after the date the payment hold is imposed.

Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 2.19(a), 2003 Tex. Gen. Laws 611, 652 (emphasis added) (amended 2005) (current version at Tex. Gov't Code § 531.102(g)(2)). Section 531.102 also provided that, on timely written request by the provider, HHSC "shall file a request with the State

Office of Administrative Hearings for an expedited administrative hearing regarding the hold." *Id.* (current version at Tex. Gov't Code § 531.102(g)(3)).

In addition, Human Resources Code section 32.0291(b) provided:

> Notwithstanding any other law, *[HHSC] may impose a postpayment hold* on payment of future claims submitted by a provider *if the department has reliable evidence that the provider has committed fraud or wilful misrepresentation regarding a claim* for reimbursement under the medical assistance program. The department must notify the provider of the postpayment hold not later than the fifth working day after the date the hold is imposed.

Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 2.103, 2003 Tex. Gen. Laws 611, 690 (emphasis added) (amended 2013) (current version at Tex. Hum. Res. Code § 32.0291(b)). The plain language of these statutes *authorized* HHSC to impose a payment hold if it had "reliable evidence that the provider has committed fraud or wilful misrepresentation" and *required* the OIG to impose a payment hold "to compel production of records or when requested by the state's Medicaid fraud unit."

It was within the context of the foregoing statutory framework that HHSC adopted rule 371.1703(b), since amended, which provided in pertinent part:

> **§ 371.1703(b)** Payment Hold. A payment hold on payments of future claims submitted for reimbursement will be imposed, without prior notice, after it is determined that prima facie evidence exists to support the payment hold. . . . *The instances in which a payment hold may be imposed without prior notice are:*
>
> (1) to compel production of records;
>
> (2) when requested by the Attorney General's Medicaid Fraud Control Unit, as applicable;

(3)     in the instance of fraud or willful misrepresentation;

(4)     when the U.S. Health and Human Services imposes a payment hold (suspension of payments) against the provider for Medicare violations and that provider or person is also a provider in the Medicaid program;

(5)     *for any reason specified in §§ 371.1609, 371.1617, 371.1621 of this subchapter, or any other provisions delineated in these rules; or*

(6)     *for any other reason specified by statute or regulation.*

1 Tex. Admin. Code § 371.1703(b) (2005) (Tex. Health & Human Servs. Comm'n, Payment Hold) (emphasis added) *repealed* 37 Tex. Reg. 7989-90 (2012) (proposed August 10, 2012). Subsections (5) and (6) of the rule clearly expanded the circumstances under which a pre-notice payment hold could be imposed beyond those identified in Government Code section 531.021(g)(2) and Human Resources Code section 32.0291(b). For instance, subsection (5) of old rule 371.1703(b) provided that a hold would be imposed, without prior notice, for the "program violations" listed in rule 371.1617, which set out a "non-exclusive" list of acts that constituted program violations, including submitting claims for non-reimbursable items, failing to properly maintain records, and failing to comply with the terms of the Medicaid program contract or provider agreement.[1] Subsection (6) of old rule 371.1703(b) stated that a payment hold would be imposed "for any other

---

[1] Subsection (5) referenced two other HHSC rules. Old rule 371.1609 set forth the OIG's responsibilities in relation to Medicaid and other provider fraud and abuse, including investigating possible cases of fraud or abuse and imposing administrative monetary penalties and damages against providers. The reference to section 371.1621 appears to be an error, as that rule was repealed contemporaneously with adoption of the 2005 rules. Otherwise, it may have been intended to refer to old rule 371.1721, which set forth program violations subject to assessment of administrative damages and penalties by the OIG, or to old rule 371.1629, which addressed the OIG's use of administrative actions to identify program violations.

reason specified by statute *or regulation*." (Emphasis added.) This provision would permit HHSC to adopt a rule authorizing a payment hold in any conceivable circumstance and justify the hold on the basis that it was "specified by . . . regulation." We believe that neither Government Code section 531.102(g)(2) nor Human Resources Code section 32.0291(b), as they existed at the time the rules were adopted, provided authority for pre-notice payment holds under the broad circumstances set forth in old rule 371.1703(b)(5) and (6).

In 2011 the legislature amended Government Code section 531.102(g)(2) to add a third basis for the OIG to impose a payment hold, but the new basis was essentially identical to the one for which HHSC was already authorized to impose a hold under section 32.0291(b) of the Human Resources Code:

> In addition to other instances authorized under state or federal law, the [OIG] shall impose without prior notice a hold on payment of claims for reimbursement submitted by a provider to compel production of records, when requested by the state's Medicaid fraud control unit, *or on receipt of reliable evidence that the circumstances giving rise to the hold on payment involve fraud or wilful misrepresentation* under the state Medicaid program in accordance with 42 C.F.R. Section 422.23, as applicable. The office must notify the provider of the hold on payment in accordance with 42 C.F.R. Section 422.23(b).

Act of May 28, 2011, 82d Leg., R.S., ch. 879, § 3.11, 2011 Tex. Gen. Laws 2228, 2234-35 (emphasis added) (further amended 2013) (current version at Tex. Gov't Code § 531.102(g)(2)). The effect of this 2011 amendment was to require the OIG to impose a payment hold upon receipt of reliable evidence of fraud or wilful misrepresentation as required by 42 C.F.R. § 455.23, which provides that a "State Medicaid agency must suspend all Medicaid payments to a provider after the agency determines there is a credible allegation of fraud . . . ." 42 C.F.R. § 455.23.

7

Thereafter, HHSC replaced old rule 371.1703 with current rule 371.1709. *See* 1 Tex. Admin. Code § 371.1709. The challenged portions of this rule now provide:[2]

### § 371.1709    Payment Hold

(a)    OIG may impose a payment hold against any person if it determines that the person committed an act for which a person is subject to administrative actions or sanctions, including the following:

. . .

(2)    commits a program violation;

(3)    is affiliated with a person who commits a program violation; or

(4)    for any other reason provided by statute or regulation.

. . .

(e)    Scope and effect of payment hold.

. . .

(2)    After a payment hold is terminated for any reason, OIG may retain the funds accumulated during the payment hold to offset any overpayment, criminal restitution, penalty or other assessment, or agreed-upon amount that may result from ongoing investigation of the person, including any payment amount accepted by the prosecuting authorities made in lieu of a prosecution to reimburse the Medicaid or other HHS program.

---

[2]    Challenged old rule 371.1703(b)(5) corresponds to current rule 371.1709(a)(2), and challenged old rule 371.1703(b)(6) corresponds to current rule 371.1709(a)(4). The current rules are substantially similar to the old rules, and HHSC contends that the same statutory authority exists for both the old rules and the current rules.

1 Tex. Admin. Code § 371.1709 (2014) (Tex. Health & Human Servs. Comm'n, Payment Hold). Subsection (b) of rule 371.1709, which the Dental Groups do not challenge, reflects the 2011 amendment to Government Code section 531.102(g)(2) and provides that the OIG must impose a payment hold against a person (1) to compel production of records or documents; (2) when requested to by the state's Medicaid Fraud Unit; or (3) upon receipt of reliable evidence that verifies a credible allegation of fraud. *Id.* § 371.1709(b)(1), (2), (3). By contrast, subsection (a) quoted above, the validity of which the Dental Groups do challenge, authorizes the OIG to impose a payment hold if a provider commits a "program violation," "is affiliated with a person who commits a program violation," or "for any other reason provided by statute or regulation." *See id.* § 371.1709(a)(2), (3), (4). Again, we agree with the Dental Groups that Government Code section 531.102(g)(2), as amended in 2011, does not provide authority for pre-notice payment holds under the circumstances set forth in rule 371.1709(a)(2), (3), or (4).

Finally, in 2013 the legislature again amended both Government Code section 531.102(g)(2) and Human Resources Code section 32.0291. As amended, Human Resources Code section 32.0291(b) now provides that HHSC's imposition of a payment hold is subject to Government Code section 531.102. Deleted from that section is the language that specifically authorized HHSC to impose a pre-notice payment hold upon receipt of credible evidence of fraud or willful misrepresentation by the provider.[3] As with the previous versions, the amendments to

---

[3] The 2013 amendments to section 531.102(g)(2) added: (1) a requirement that the OIG employ experts to review certain investigative findings before imposing a payment hold without prior notice, and (2) additional requirements to the content of the notice to be sent to the provider after a payment hold has been imposed, specifically, that the notice inform the provider of the basis for the hold and describe the administrative and judicial due-process remedies available to the

9

these statutes do not transform them into a legislative grant of authority for the imposition of a pre-notice payment hold under the circumstances set forth in rule 371.170(a)(2), (3), or (4). Thus, such authority, if it exists, must be found elsewhere in HHSC's enabling legislation, either expressly or by necessary implication.

As HHSC correctly states in its brief, the determining factor in deciding whether an administrative agency has exceeded its rule-making authority is whether the rules are "in harmony" with the general objectives of the legislation involved. *Railroad Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992); *Gulf Coast Coal. of Cities v. Public Util. Comm'n*, 161 S.W.3d 706, 711 (Tex. App.—Austin 2005, no pet.). For an administrative rule to be "in harmony" with legislative objectives, it must not impose additional burdens, conditions, or restrictions in excess of or inconsistent with relevant statutory provisions. *Gulf Coast Coal. of Cities*, 161 S.W.3d at 712. This is a question of law determined through statutory construction. *Id*. Here, the Dental Groups argue that administrative rules permitting a payment hold without prior notice under the broad circumstances provided for in rule 371.1709(a) contravene the legislative language and intent, as expressed in Government Code section 531.102(g)(2), that such holds are to be imposed only in the narrow circumstances identified in that statute.

OIG is the arm of HHSC responsible for "the investigation of fraud and abuse in the provision of health and human services." Tex. Gov't Code § 531.102(a). The statutory provisions in the Government Code pertinent to the OIG, including section 531.102, relate to the OIG's

---

provider, including the right to seek an informal resolution and the right to a formal administrative hearing. *See* Tex. Gov't Code § 531.102(g)(2).

statutorily defined function to detect fraud and process cases of suspected fraud, waste, or abuse. *See id.* § 531.103. Through the challenged rules, HHSC grants the OIG authority, and assumes authority for itself, to impose a payment hold whenever it believes a provider has committed any program violation, no matter how minor and irrespective of whether there is any indication of fraud or other intentional abuse. As noted above, the rules significantly expand the circumstances under which a pre-notice payment hold can be imposed beyond those enumerated in Government Code section 531.021(g)(2). Thus, the challenged rules are inconsistent with the legislature's directives related to those payment holds that it has expressly authorized.

In addition, we note that a provider subject to a payment hold imposed pursuant to the challenged rules is not expressly given the right to the procedural protections that the legislature mandated be available when a pre-notice payment hold is imposed for the more serious circumstances involving Medicaid fraud or refusal to produce requested documents or records. If HHSC has the authority to impose a payment hold under any circumstances, rather than being limited to the circumstances identified in section 531.102(g)(2), the result would be that providers who were subjected to a mandatory payment hold based on allegations of fraud are given *more* procedural protections (such as a contested-case hearing at the State Office of Administrative Appeals (SOAH)) than a provider who committed a less serious "program violation." As written, the rules permit the OIG to impose a payment hold, without notice and in the absence of fraud, and yet avoid the due-process notice procedures and expedited administrative review the legislature required in connection with the payment holds it expressly authorized. "Implied authority is not authority to depart from

the intent of the statute." *Texas Dep't of Human Servs. v. Christian Care Ctrs., Inc.*, 826 S.W.2d 715, 721 (Tex. App.—Austin 1992, writ denied).

We hold that HHSC's adoption of rules that permit pre-notice payment holds to be imposed for any alleged violation of the Medicaid program, no matter how minor, is inconsistent with the intent of Government Code chapter 531, subchapter C, which is to address and remediate Medicaid fraud and abuse and permit payment holds under circumstances involving fraud or abuse of the Medicaid program. *See* Tex. Gov't Code § 531.102(a). The fact that the challenged rules lack the due-process notice and hearing requirements that are the hallmark of legislation expressly authorizing the imposition of pre-notice payment holds bolsters our conclusion.

We are cognizant that the legislature gave HHSC full rulemaking authority as necessary for the proper and efficient operation of the Medicaid program. *See* Tex. Hum. Res. Code § 32.021(c). A means of enforcing the administrative rules can certainly be implied from the grant of this authority. *See Christian Care Ctrs.*, 826 S.W.2d at 720. In fact, HHSC has adopted rules permitting it to impose a variety of sanctions for non-fraud-related program violations. Implied statutory authority, however, is limited to what is necessary and reasonable. *See Bullock v. Hewlett-Packard Co.*, 628 S.W.2d 754, 756 (Tex. 1982). The Government Code expressly grants the OIG authority to assess administrative penalties on HHSC's behalf. *See* Tex. Gov't Code § 531.102(h). It is neither reasonable nor necessary, however, for HHSC to be permitted to impose a pre-notice payment hold, without the opportunity for an administrative hearing regarding the hold, on a provider who commits a Medicaid-program violation merely to enforce its rules or ensure the

12

proper and efficient operation of the program.[4]  In fact, doing so could actually impair that mission, as it could result in Medicaid providers withdrawing from the program, declaring bankruptcy, or otherwise being unable to continue providing services for which they are not being paid until the matter triggering the hold has been resolved.  We hold that the trial court erred in concluding that old rules 371.1703(b)(5) and (6) and current rules 371.1709(a)(2), (3), and (4) are valid.[5]

We next consider the validity of challenged rule 371.1709(e)(2), which provides that when HHSC has imposed a pre-notice payment hold on Medicaid reimbursement funds pursuant to either section 371.1709(a) or 371.1709(b), it may retain seized funds even after that hold is terminated for any reason.  Because we have concluded that rules 371.1709(a)(2), (3), and (4) are not valid, we need only consider the validity of rule 371.1709(e)(2) in the context of a payment hold imposed pursuant to rule 371.1709(b), i.e., for any of the three grounds set forth in

---

[4]  We also observe that if the legislature did in fact grant HHSC the authority to impose payment holds, without prior notice, for "program violations," it likely would, and may be constitutionally required to, mandate that the provider subject to the hold be entitled to an expedited administrative hearing at SOAH challenging the agency action.

[5]  Our holding appears to be consistent with the findings of the Sunset Advisory Commission Staff report regarding OIG payment holds.  In their report issued in October 2014, the Staff recommended as follows:

> 11.3    Clarify OIG's authority to place payment holds only in serious circumstances
>
> This recommendation would clarify that OIG's payment hold authority applies only in circumstances requiring a serious enforcement tool to mitigate ongoing financial risk to the state, such as a pattern of billing behaviors or practices that indicate fraud. . . . Payment holds would not be authorized for standard overpayment cases or non-fraudulent errors.  OIG would not be authorized to apply payment holds to aid in bargaining and settlement negotiations.  This recommendation would not affect OIG's existing authority to pursue and recover overpayments.

Sunset Advisory Commission, Health & Human Servs. Comm'n, Staff Report, at 159 (Oct. 2014).

13

Government Code section 531.102(g)(2). *See* Tex. Gov't Code § 531.102(g)(2) (providing for payment hold to compel production of documents, when requested by state's Medicaid Fraud Control Unit, or on receipt of credible evidence of fraud). The duration of a payment hold imposed pursuant to section 531.102(g)(2) is not indefinite but depends initially on the outcome of the expedited SOAH hearing regarding the hold. *See Janek v. Harlingen Family Dentistry, P.C.*, No. 03-13-00625-CV; 2014 WL 5653501, at *5 (Tex. App.—Austin Oct. 30, 2014, no pet. h.). When rule 371.1709(2)(e) was adopted in 2012, Government Code section 531.102(g)(2) required that a hold placed by the OIG be imposed "in accordance with 42 C.F.R. 455.23, as applicable." Act of May 28, 2011, 82d Leg., R.S., ch. 879, § 3.11, 2011 Tex. Gen. Laws 2234-24 (amended 2013) (current version at Tex. Gov't Code § 531.102(g)(2)). The referenced section of the Code of Federal Regulations provides:

  • Notice of the hold must be sent to the provider and must state that the suspension is "for a temporary period" and "cite the circumstances under which the suspension will be terminated."

  • Suspension of payment actions will be temporary and will not continue after (1) the agency or prosecuting authorities determine there is insufficient evidence of fraud by the provider or (2) legal proceedings related to the alleged fraud are completed.

  • If a state Medicaid agency referral and investigation leads to a payment suspension, the payment suspension may be continued until such time as the investigation and any enforcement proceedings are completed.

42 C.F.R. § 455.23.

Thus, a payment hold imposed pursuant to Government Code section 531.102(g) is temporary and must end under the circumstances outlined in the applicable federal and state

regulations. As we held in *Janek v. Harlingen Family Dentistry*, HHSC's right to possess funds pursuant to a payment hold for fraud depends solely on the existence of credible evidence of such fraud. In the absence of such evidence, "the State's right to temporary possession of the funds no longer exist[s]." *Janek*, 2014 WL 5653501, at \*5. Once the statutory basis for imposing the hold ceases to exist, HHSC no longer has the authority to possess those funds. The same is true for funds accumulated pursuant to a hold imposed for the other reasons identified in section 531.102(g)(2). Accordingly, a rule permitting the OIG to continue to possess a Medicaid provider's funds when the justification for imposing the temporary payment hold has terminated is in excess of HHSC's statutory authority. For this reason, we hold that current rule 371.1709(e)(2) is invalid, and the trial court erred in concluding otherwise.

## CONCLUSION

For the reasons stated above, we sustain the Dental Groups' sole appellate issue and reverse the trial court's judgment. We render judgment that old rules 371.1703(b)(5) and (6) and current rules 371.1709(a)(2), (3), (4) and 371.1709(e)(2) are invalid.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Reversed and Rendered

Filed:   November 25, 2014

15