ACCEPTED
03-13-00526-CV
3712698
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/9/2015 12:35:22 PM
JEFFREY D. KYLE
CLERK

## NO. 03-13-00526-CV

# IN THE COURT OF APPEALS
# THIRD COURT OF APPEALS DISTRICT

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/9/2015 12:35:22 PM
JEFFREY D. KYLE
Clerk

**PHARMSERV, INC.,** *Appellant*

## V.

## THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION and OFFICE OF INSPECTOR GENERAL OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION, *ET AL*
*Appelles*

## On Appeal from the 261st Judicial District Court of Travis County, Texas
## Cause No. D-1-GN 12-00107-CV

## TexasTruecare's Amicus Curiae Brief

Respectfully submitted,

RIGGS ALESHIRE & RAY, P.C.

Jennifer S. Riggs
Bar No. 16922300
700 Lavaca St., Suite 920
Austin, Texas 78701
(512) 457-9806 Telephone
(512) 457-9066 Facsimile
Jriggs@r-alaw.com

# **TABLE OF CONTENTS**

Table of Contents ......................................................................................................i

Index of Authorities .................................................................................................. ii

Disclosure of Interest ..............................................................................................iv

Summary of the Argument........................................................................................1

Argument and Authorities.........................................................................................3

      I.      Due Process ..............................................................................................3

      II.     Statutory Authority: Payment holds and hearings to challenge them...5

      III.    Separation of Powers ..............................................................................9

      IV.   A sanction by any other name is still a sanction ................................12

Prayer ......................................................................................................................14

Certificate of Compliance .......................................................................................14

Certificate of Service ..............................................................................................15

# INDEX OF AUTHORITIES

## Cases

*Grounds v. Tolar Independent School Dist.*,
856 S.W.2d 417 (Tex. 1993). ...............................................................................3, 4

*Harlingen Family Dentistry, P.C. v. Texas Health and Human Services
Commission*, --- S.W.3d ----, 2014 WL 6844947,
(Tex. App.-Austin, Nov 25, 2014, no pet. hist.)
(NO. 03-14-00069-CV) ........................................................................................8, 12

*McAllen Hospitals, L.P. v. Suehs*,
426 S.W.3d 304 (Tex. App.-Amarillo, 2014, no pet.). ...................................4

*State v. Flag-Redfern Oil Co.*, 852 S.W.2d 480 (Tex. 1993). ................................10

*Stratton v. Austin Independent School Dist.*,
8 S.W.3d 26, 29 (Tex. App.-Austin 1999, no writ). ......................................3

*Texas Dept. of Human Services v. Christian Care Centers, Inc.*,
826 S.W.2d 715 (Tex. App.-Austin, 1992, writ denied) ...........................8, 9

## Texas Constitution

TEX. CONST. Art. I, section 13. ...........................................................................11

TEX. CONST. Art. II, section 1. ...........................................................................10

## Texas Statutes

TEX. GOV'T CODE § 2260. ...................................................................................11

TEX. GOV'T CODE ANN. § 531.102(a). ..........................................................6, 7, 12

TEX GOV'T CODE §531.1101(1). ..........................................................................6

TEX HUMAN RESOURCES CODE § 32.0291. ...................................5, 6, 7, 12

## Administrative Rules

1 T.A.C. §354.1811. ................................................................................13

1 T.A.C. §354.1891. ..........................................................................5, 12, 13

1 T.A.C. §371.1667. ............................................................................5, 7, 12

# DISCLOSURE OF INTEREST

# (COMPLIANCE WITH TRAP 11)

This amicus curiae brief is submitted on behalf of Pharmacy Buying Association, Inc., d/b/a Texas TrueCare and PBA Health. Texas TrueCare is a Pharmacy Services Administration Organization ("PSAO") recognized by federal government as an agent authorized to negotiate and/or sign contracts on behalf of providers in the Medicaid program. See CMS Standard Operating Procedures §50.8.1("Some pharmacies, particularly independent pharmacies, work with agents or Pharmacy Services Administration Organizations (PSAO) for purposes of negotiating and/or signing contracts with Part D sponsors."). Texas TrueCare is a membership-based organization with over 600 member independent pharmacies in Texas. Texas TrueCare keeps its members informed of potential changes in law or regulations that may affect their businesses and their patients. Texas TrueCare has been closely following this case due to the tremendous impact it could have on its member pharmacies and their patients.

Texas TrueCare is paying the fee for the preparation of this amius curiae brief.

This brief contains a certificate of service, as required by TRAP 11(c).

## SUMMARY OF ARGUMENT

The Texas Health and Human Services Commission and its Office of Inspector General (collectively HHSC-OIG) take the position that a provider of pharmacy services under contract with the HHSC to provide services in the Texas Medicaid program simply has no right to judicial review. The HHSC-OIG contends (1) that the due process clauses of the Texas Constitution, Article I, sections 13 and/or 19, do not confer such rights; (2) that section 32.0291of the Texas Human Resources Code does not confer such rights because it does not apply; (3) that 1 T.A.C. §371.1667 does not confer such rights because it applies only to "sanctions" and a pharmacy audit recoupment is not a "sanction"; (4) that 1 T.A.C. §354.1891(c) does apply but does not provide for a hearing and judicial review; and (5) that the HHSC Medicaid contract itself does not create a right to a hearing and judicial review.

The simple resolution of this matter is that a sanction by any other name is still a sanction. The HHSC cannot avoid the consequences of its actions simply by labeling its action an "audit," as opposed to a sanction. As noted in *Harlingen II*, affording a provider a full adjudicative hearing on alleged fraud and abuse while providing no hearing and no judicial review on simple program violations makes no sense.

The HHSC-OIG, however, contends that program violations subject to audit that do not involve fraud and abuse are fundamentally different. That may well be true – the essence of an adverse audit finding is that the provider has breached its agreement with the HHSC. What the HHSC-OIG glosses over, however, is the complete absence of statutory authority to exercise self-help by withholding future payments to remedy alleged past breaches of the Medicaid contract. It is the statutes that afford a provider a hearing and judicial review that confer the authority to withhold funds from providers. If the hearing and judicial review provisions of such legislation do not apply then neither does the authority to withhold pending hearing and judicial review.

At issue here is not just the jurisdiction of the courts, but the jurisdiction of the HHSC. The HHSC has no authority to adjudicate contract rights. When the HHSC withholds money under its contracts with pharmacy providers to enforce audit findings, it is effectively adjudicating contract rights. The fact that the doctrine of sovereign immunity may prevent a pharmacy provider from suing the HHSC for breach of contract does not mean that the HHSC may effectively sue the pharmacy provider for breach of contract without doing so in court. There are two sides to that coin. Absent a legislative scheme that transfers the contract remedy to an agency, a pharmacy provider has the right to *defend* alleged breach of contract claims in court.

As a result, the HHSC-OIG lacks authority to withhold the funds at issue until and unless it files a breach of contract claim in district court. The district court has the jurisdiction to consider its failure to do so.

## ARGUMENT AND AUTHORITIES

### I.    Due Process

The HHSC-OIG appears to acknowledge that a statute, agency rule or contract *can* confer rights that are protected by due process, depending on its terms. (Appellees' Brief, pp. 16-19, can depend on parties "understanding") It is not necessary, however, that such a statute or contract expressly provide the right to a due process hearing. For example, in *Grounds v. Tolar Independent School Dist.*, 856 S.W.2d 417 (Tex. 1993), the Court addressed the Term Contract Nonrenewal Act (TCNA), which required that a school district have reasons not to renew a contract, and held "that this limit on the school district's discretion is sufficient to create a property interest entitled to due process protection." *Grounds*, 856 S.W.2d at 420. Although subsequent amendments to the TCNA expressly disclaimed any such due process interest, *see Stratton v. Austin Independent School Dist.*, 8 S.W.3d 26, 29 (Tex. App.-Austin 1999, no writ), the initial constitutional basis in *Grounds* for finding a due process interest remains.

*Grounds* was based on a long line of decisions from the United States Supreme Court and other federal courts. For example,

> The United States Supreme Court defined a constitutionally protected property interest in *Logan v. Zimmerman Brush Co.* as "an individual entitlement grounded in state law, which cannot be removed except 'for cause'." 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (quoting *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 11–12, 98 S.Ct. 1554, 1561–62, 56 L.Ed.2d 30 (1978)) (other citations omitted). The "for cause" requirement discussed in *Logan* constitutes a substantive limit on the State's discretion creating a property interest. Likewise, the TCNA requirement of pre-established reasons for nonrenewal constitutes a substantive limit on the State's discretion creating a property interest.

*Grounds,* 856 S.W.2d at 418.

The decision in *McAllen Hospitals, L.P. v. Suehs,* 426 S.W.3d 304 (Tex. App.-Amarillo, 2014, no pet.), with respect to due process is not to the contrary. The property interest necessary to sustain a "takings" claim for inverse condemnation of property is not the same property interest that triggers procedural due process protection. In *McAllen Hospitals,* the Amarillo Court of Appeals noted that the hospitals had not availed themselves of all available remedies, hence they had no viable due process claim. *McAllen Hospitals,* 426 S.W.3d at 313. The same considerations do not apply here, where all administrative remedies made available by the HHSC-OIG were exhausted.

Certainly the HHSC-OIG cannot contend that it may withhold contract payments for any reason, no matter how arbitrary, or no reason at all. The HHSC-OIG has only the powers granted to it expressly or by necessary implication. As a

result, it cannot withhold contract payments on a basis for which it lacks authority. The HHSC-OIG rules themselves require that there be some basis for the audit findings. *See, e.g.,* 1 T.A.C. §354.1891.

Likewise, the Medicaid contract itself requires compliance with Medicaid program requirements. It would strain credulity to argue that the contract does not create a legitimate expectation of payment if program requirements *are* met.

For these reasons, the HHSC cannot withhold contract payments absent some legitimate reason. Those regulatory and contractual limits themselves create a property interest entitled to due process protection.

## II. Statutory Authority: Payment holds and hearings to challenge them

The HHSC-OIG contends that section 32.0291of the Texas Human Resources Code and 1 T.A.C. §371.1667 do not confer on pharmacy providers the right to a hearing and judicial review because those provisions do not apply to pharmacy providers subject to performance audit reviews, which do not involve fraud and abuse.

Section 32.0291 provides as follows:

(a) Notwithstanding any other law, the department may:

> (1) perform a *prepayment review of a claim* for reimbursement under the medical assistance program to determine whether the claim *involves fraud or abuse;* and

(2) as necessary to perform that review, *withhold payment of the claim for not more than five working days* without notice to the person submitting the claim.

(b) Subject to Section 531.102, Government Code, and notwithstanding any other law, the department may impose a payment hold *on future claims* submitted by a provider.

(c) A payment hold authorized by this section is governed by the requirements and procedures specified for a payment hold under Section 531.102, Government Code, including the notice requirements under Subsection (g) of that section.

TEX HUMAN RESOURCES CODE §32.0291 (emphasis added).

As a preliminary matter, section 32.0291 expressly references section 531.102 of the Texas Government Code. Chapter 531 of the Texas Government Code governs "Medicaid and Other Health and Human Services Fraud, Abuse, or Overcharges." In the 2013, the HHSC sought and obtained from the Texas Legislature a very broad definition of "abuse":

(1) "Abuse" means:

(A) a practice by a provider that is inconsistent with sound fiscal, business, or medical practices and that results in:

(i) an unnecessary cost to the Medicaid program; or

(ii) the reimbursement of services that are not medically necessary or that fail to meet professionally recognized standards for health care; or

(B) a practice by a recipient that results in an unnecessary cost to the Medicaid program.

TEX GOV'T CODE §531.1101(1) (Vernon Supp. 2013).

Abuse, as defined in this section is not limited to fraud and is broad enough to encompass simple program violations. For policy reasons, perhaps it should not.

But the language supports applying all of the provisions of Chapter 531, if any of them apply. As a result, if the payment hold provisions of section 531.102, to which this definition applies, apply to authorize a temporary payment hold, then so, too, do the hearing provisions of section 531.102. The fact that the "unnecessary cost" is actually determined through a process called an "audit" as opposed to an investigation makes no substantive difference.

The definition of a "provider" that is subject to section 531.102 (and, therefore, to section 32.0291), is likewise broad:

> (10) "Provider" means a person, firm, partnership, corporation, agency, association, institution, or other entity that was or is approved by the commission to:
> (A) provide medical assistance under contract or provider agreement with the commission; or
>
> (B) provide third-party billing vendor services under a contract or provider agreement with the commission.

TEX GOV'T CODE §531.1101(10) (Vernon Supp. 2013).

Pharmacy providers clearly fall within this broad definition. The HHSC cannot identify any laws, because there are none, that authorizes the HHSC to label a pharmacy provider as an "audited entity" simply to evade the notice and hearing requirements of Chapter 531.

As a result, sections 32.0291 and rule 371.1667 do apply to pharmacy providers. On the other hand, if section 32.0291 and rule 371.1667 do not apply, then the HHSC-OIG likewise lacks authority to impose a temporary payment hold,

much less a permanent payment hold. The HHSC-OIG glosses over the complete absence of any other statutory authority to exercise self-help by withholding future payments to remedy alleged past breaches of the Medicaid contract.

As noted by this Court in *Harlingen Family Dentistry, P.C. v. Texas Health and Human Services Commission*, --- S.W.3d ----, 2014 WL 6844947 (Tex. App.-Austin, Nov 25, 2014, no pet. hist.) (NO. 03-14-00069-CV):

> Through the challenged rules, HHSC grants the OIG authority, and assumes authority for itself, to impose a payment hold whenever it believes a provider has committed any program violation, no matter how minor and irrespective of whether there is any indication of fraud or other intentional abuse. As noted above, the rules significantly expand the circumstances under which a pre-notice payment hold can be imposed beyond those enumerated in Government Code section 531.021(g)(2). Thus, the challenged rules are inconsistent with the legislature's directives related to those payment holds that it has expressly authorized,

*Harlingen Family Dentistry*, 2014 WL 6844947, *5. This Court also noted the anomalous result of affording a hearing to a provider accused of fraud, but not to one accused "only" of program violations. *Id.*

This Court's decision in *Texas Dept. of Human Services v. Christian Care Centers, Inc.*, 826 S.W.2d 715 (Tex. App.-Austin, 1992, writ denied) is also instructive here. In *Christian Care*, this Court held that the predecessor to the HHSC exceeded its statutory authority in promulgating a rule providing for the permanent withholding of payments for services actually rendered to qualified

Medicaid patients, based on nursing homes' failure to timely submit "level of care" forms:

> TDHS is required to pay for qualified services made to eligible patients or give notice before finding patients ineligible, so that disqualified patients may exercise their due-process right to appeal eligibility decisions. *See* Tex.Hum.Res.Code Ann. § 32.035 (1990); 42 U.S.C. § 1396a(a)(3) and (10) (1988 & Supp.I.1989); 42 C.F.R. § 431.200–.250 (1991); *see also Goldberg,* 397 U.S. 254, 90 S.Ct. 1011. By providing that a "Level of Care ceases to exist," rather than declaring a patient medically ineligible, TDHS seeks to avoid these due-process notice and appeal requirements. We find that use of this grammatical fiction circumvents the primary intent of the Medicaid statute; to provide continuous payment for necessary services to eligible individuals. Implied authority is not authority to depart from the intent of the statute. *Sexton,* 720 S.W.2d at 137; *see also Texas Bd. of Dental Examiners v. Prichard,* 446 S.W.2d 905, 909 (Tex.Civ.App.1969, writ ref'd n.r.e.).
>
> One of the key determinants of whether a rule is within an agency's implied authority is whether the rule harmonizes with the purpose of the agency's governing statute, in all of its provisions. *See Gerst v. Oak Cliff Sav. & Loan Ass'n,* 432 S.W.2d 702, 706 (Tex.1968); *see also State Bd. of Ins. v. Deffebach,* 631 S.W.2d 794, 798 (Tex.App.1982, writ ref'd n.r.e.); *Jefco, Inc. v. Lewis,* 520 S.W.2d 915, 921 (Tex.Civ.App.1975, writ ref'd n.r.e.). *It would be inconsistent with the overall purposes of the Medical Assistance statute, i.e. providing quality nursing services to Medicaid qualified patients, to give TDHS the authority to withhold funds permanently, merely for failure to file updated records timely.*

*Christian Care Centers, Inc.,* 826 S.W.2d at 721(emphasis added).

## III.  Separation of Powers

In determining the scope of the HHSC-OIG authority, this Court looks to powers granted expressly or by necessary implication in statutes. In evaluating the HHSC-OIG's contentions regarding the scope of its authority, the Court must also consider any constitutional limits on such grants of authority and interpret the

authority in manner that renders it constitutional. Article II, section 1, of the Texas Constitution, the Separation of Powers provision, imposes limits on the authority that may be exercised by agencies in the Executive Department of Government. TEX. CONST. Art. II, §1.

The essence of an HHSC-OIG adverse audit finding is that the provider has breached its agreement with the HHSC. The HHSC, however, has no authority to *adjudicate* contract rights. *See State v. Flag-Redfern Oil Co.*, 852 S.W.2d 480 (Tex. 1993). In *Flag-Redfern*, a group of mineral lessees challenged the authority of the General Land Office (GLO) to adjudicate contract rights. At issue was a statutory scheme under which the GLO audited the leases retrospectively and withheld payments due prospectively to remedy what the GLO deemed to be violations of the lease. The Court held that although the GLO does not have authority to adjudicate the contract rights of parties to state mineral leases, the GLO may conduct audits to reassess the GLO's position under such contracts. *Flag-Redfern Oil Co.*, 852 S.W.2d at 484.

The *Flag-Redfern* Court stated:

> To the extent that section 52.135 merely allows the State to reassess its position with regard to state mineral leases, rather than to subject participants to binding judgments, we hold that the statute does not offend article II, section 1 of the Texas Constitution. *See Fristoe v. Blum*, 92 Tex. 76, 85, 45 S.W. 998, 1002 (1898).

*Flag-Redfern Oil Co.*, 852 S.W.2d at 484. The implications of the case are clear – if the statute *had* allowed the GLO to render what amounted to a binding judgment, such action would have violated article II, section 1.

When the HHSC-OIG withholds money under its contracts with pharmacy providers to enforce audit findings, it is effectively adjudicating contract rights. Because the HHSC-OIG withholds money it alleges the pharmacy providers owe under their provider agreements, with no opportunity for judicial review, much less a hearing, the effect of the action is that of a binding judgment. As a result, its action violates article II, section 1, of the Texas Constitution.

The *Flag-Redfern* Court further held that the requirement that state mineral lessees pay any disputed royalties before seeking judicial review of the GLO audit violated the lessees' constitutional right to access to courts under article I, section 13, of the Texas Constitution. PharmServ raised the applicability of article I, section 13, in this case.

The fact that the doctrine of sovereign immunity may prevent a pharmacy provider from suing the HHSC for breach of contract does not mean that the HHSC may effectively sue the pharmacy provider for breach of contract without doing so in court. There are two sides to the breach of contract coin. Absent a legislative scheme that transfers the contract remedy to an agency, such as Chapter 2260 of the Texas Government Code, a pharmacy provider has the right to *defend*

alleged breach of contract claims in court. The trial court had the jurisdiction to consider such claims.

## IV. A sanction by any other name is still a sanction

The HHSC cannot avoid the consequences of its actions simply by labeling its action an "audit," as opposed to a "sanction." The HHSC-OIG's position is that 1 T.A.C. §371.1667 does not confer the right to a hearing because it applies only to "sanctions" and a pharmacy audit recoupment is not a "sanction." The HHSC-OIG further urges that 1 T.A.C. §354.1891(c) applies instead and that §354.1891(c) does not expressly provide for a hearing and judicial review. The trial court had jurisdiction to consider whether §354.1891 means what the HHSC-OIG says it means and, if it does, whether it is invalid as inconsistent with the overall statutory scheme for the Medicaid program and/or the due process clauses of the Texas Constitution.

In evaluating the HHSC-OIG's position regarding §354.1891, the Court must consider the rule *in context*. Section 354.1891 must be considered in the context of the overall Medicaid program. *See Harlingen II*, 2014 WL 6844947, *5; *Christian Care*, 826 S.W.2d at 721. In addition, that means reconciling the rule with sections 32.0291 of the Human Resources Code and its incorporation of section 531.102 of the Texas Government Code and the definitions, discussed

above, that apply to that section. Finally, interpreting the rule in context requires consideration of the rest of Chapter 345 of the HHSC rules.

The HHSC-OIG fails to reconcile its position regarding §354.1891 with 1 T.A.C. §354.1811. Section 354.1811, which is entitled simply "Sanctions," provides as follows:

> (a) The Health and Human Services Commission (HHSC) reserves the right to impose administrative sanctions on a pharmacy provider who conducts pharmaceutical practices in violation of the ethics adopted by the profession, *any applicable federal or state laws, or the criteria of HHSC's Vendor Drug Program. Sanctions include, but are not limited to, termination or suspension from participation, suspension of payments, and recoupment of overpayments.*
>
> (b) On receipt of a written request, HHSC provides an appeal to a pharmacy provider on whom HHSC sanctions have been placed for a violation described in subsection (a) of this section.

1 T.A.C. §354.1811 (emphasis added).

The HHSC's own rules describe recoupment of an overpayment for violations of the criteria of the Vendor Drug Program or any applicable federal or state law as "sanctions." As a result, the HHSC-OIG's argument that rule 371.1667 does not apply lack merit. Pharmacy providers are entitled to a hearing and judicial review.

# PRAYER

FOR THESE REASONS, Texas TrueCare, as Amicus Curiae urges this Court to reverse the order dismissing this case for lack of jurisdiction and to remand the case for further proceedings consistent with the Court's opinion.

Respectfully submitted,

/s/ Jennifer S. Riggs
Jennifer S. Riggs
RIGGS ALESHIRE & RAY, P.C.
Bar No. 16922300
700 Lavaca St., Suite 920
Austin, Texas 78701
(512) 457-9806 Telephone
(512) 457-9066 Facsimile
Jriggs@r-alaw.com

## CERTIFICATE OF COMPLIANCE UNDER RULE 9.4(i)(3)
## OF THE TX. RULES OF APPELLATE PROCEDURE

By my signature below I certify that a computer assisted word count of the portions of this brief per Rule 9.4(i) (3) Tx. Rules of Appellate Procedure indicates that the number of countable words is 3,185, from the beginning of the Summary at page number 1 through the Prayer.

/s/ Jennifer S. Riggs
Jennifer S. Riggs

## <u>CERTIFICATE OF SERVICE</u>

By my signature below I certify that a true and correct copy of the above and foregoing document was served on the following by hand delivery and/or electronic filing on January 9, 2015.

Jeff Avant
AVANT & MITCHELL, L.P.
700 Lavaca, Suite 1400
Austin, Texas 78701
avantlaw@swbell.net

Hugh M. Barton, P.C.
603 West 13th St., Suite 1B
Austin, TX 78701
bartonlaw@yahoo.com

Ann Hartley, Assistant Attorney General
Financial, Tax and Litigation Section
Office of the Attorney General
300 West 15th, 6th Floor
Austin, TX 78711
Ann.hartley@texasattorneygeneral.gov

/s/ Jennifer S. Riggs_____
Jennifer S. Riggs