

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

August 9, 2016

Mr. J. Winston Krause
Chairman
Texas Lottery Commission
Post Office Box 16630
Austin, Texas 78761-6630

Opinion No. KP-0107

Re: Authority of the Texas Lottery Commission to deny, suspend, or revoke a lottery ticket sales agent license in specific instances (RQ-0096-KP)

Dear Chairman Krause:

You ask whether the Texas Lottery Commission ("Commission") in specific instances may

> deny, suspend, or revoke a lottery ticket sales agent license . . .
> where the Commission has evidence . . . that an applicant or licensee
> has conducted or allowed illegal gambling activity at its retail
> location but [the person] has not been convicted of gambling or a
> gambling-related offense.[1]

You also ask several questions conditioned on the outcome of our analysis. *See* Request Letter at 1–2. You tell us that your questions relate to "instances where there has not been a final adjudication of guilt," but you do not specify whether the evidence in question has resulted in formal charges being filed against the applicant or licensee. *Id.* at 1. To provide context for your specific questions, we review the Commission's general authority with regard to sales agent licensure, recognizing that a state agency has no inherent substantive powers of its own. *Tex. Nat. Res. Conservation Comm'n v. Lakeshore Util. Co.*, 164 S.W.3d 368, 377 (Tex. 2005). Instead, an agency's authority is limited to those powers expressly conferred upon it by the Legislature or from which may be implied the powers reasonably necessary to exercise its express powers. *Id.*

The State Lottery Act ("Act") in chapter 466 of the Texas Government Code governs the operation and administration of the lottery. *See generally* TEX. GOV'T CODE §§ 466.001–.453. The Legislature has given the Commission "broad authority" over the lottery and has charged it with exercising "strict control and close supervision over all lottery games . . . to promote and ensure integrity, security, honesty, and fairness in the operation and administration of the lottery." *Id.* § 466.014(a). To sell lottery tickets, a person not employed by the Commission must be

---

[1]*See* Letter from Mr. J. Winston Krause, Chair, Tex. Lottery Comm'n, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Feb. 10, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

licensed as a sales agent. *Id.* § 466.151(a). The Act sets forth the Commission's authority with respect to sales agent licenses. First, the Commission "may issue a license . . . only if the director finds that the person's experience, character, and general fitness are such that the person's participation as a sales agent will not detract from the integrity, security, honesty, and fairness of the operation of the lottery." *Id.* § 466.151(e). Second, the Commission must "adopt rules under which, before issuing a license to an applicant, the director shall consider" five particular factors,[2] in addition to "any other factor that the director considers appropriate." *Id.* § 466.154. Third, the Commission must deny, suspend, or revoke a license after a hearing if it finds that certain circumstances exist. *See id.* § 466.155(a), (e)–(f). Pertinent to your questions, these circumstances include the Commission finding that an applicant or a sales agent (1) has been "convicted of a . . . gambling or a gambling-related offense" under certain circumstances; (2) "is or has been a professional gambler"; or (3) "has violated [chapter 466] or a rule adopted under [that] chapter." *Id.* § 466.155(a)(1)(A)–(B), (5). The Commission also has authority under the Occupations Code to deny, suspend, or revoke a license on certain grounds related to criminal history.[3] Such grounds include a conviction on "an offense that directly relates to the duties and responsibilities of the licensed occupation." TEX. OCC. CODE § 53.021(a)(1).

You first ask generally about the effect of an applicant or licensee having "been placed on deferred adjudication for gambling or a gambling-related offense." Request Letter at 1. Occupations Code subsection 53.021(d) authorizes a licensing authority to consider certain deferred adjudications to be convictions.[4] Subsection 53.021(d) provides that if, after considering

---

[2]The five factors are:

> (1) the financial responsibility and security of the applicant and the business or activity in which the applicant is engaged; (2) the public accessibility of the applicant's place of business or activity; (3) the sufficiency of existing sales agents to serve the public convenience; (4) whether individuals under 18 years of age constitute a majority of the applicant's customers or as customers provide a majority of the applicant's sales volume; [and] (5) the volume of expected sales.

TEX. GOV'T CODE § 466.154(1)–(5).

[3]Chapter 53 of the Occupations Code applies to state licensing agencies except where specifically excluded and generally addresses the consequences of criminal convictions for the purpose of occupational licensing. *See generally* TEX. OCC. CODE §§ 53.001–.105; *see also id.* § 53.002 (listing persons and entities excluded from coverage, none of which affect the Commission or its licensees).

[4]For purposes of section 53.021, a licensing authority normally may not consider a person to be "convicted" if (1) the person entered a guilty or nolo contendere plea; (2) the person received deferred adjudication and was placed on community supervision; and (3) at the end of the supervision, the judge dismissed the proceedings and discharged the person. *Id.* § 53.021(c).

certain specified factors,[5] the licensing authority determines that the person would pose a continued threat to public safety, or that employment in the licensed occupation would give the person "an opportunity to repeat the prohibited conduct," the licensing authority may consider a person to have been "convicted" regardless of the dismissal or discharge status of the criminal proceedings if the person has been charged with specified offenses.[6] *Id.* § 53.021(d)(1)–(2).

However, subsection 53.021(a-1) generally does not authorize a licensing authority to deny, suspend, or revoke a license for convictions on Class C misdemeanors. *Id.* § 53.021(a-1). Gambling is a Class C misdemeanor. TEX. PENAL CODE § 47.02(d). Because agencies possess no inherent substantive authority, and no statute we are aware of grants the authority you ask about, state law does not allow the Commission to deny, suspend, or revoke a license due to a person having received deferred adjudication for the offense of gambling. But the Commission may consider a deferred adjudication on a gambling-related offense to be a conviction for purposes of subsection 53.021(a) if the circumstances meet the requirements of subsection 53.021(d), and in such circumstances it is authorized to deny, suspend, or revoke a license.[7]

Next, you ask whether the Commission or the executive director may "consider the presence of illegal gambling activity at a proposed or existing lottery retail location in determining whether an applicant . . . possesses the character or fitness required to serve as a lottery sales agent, and for that reason deny an application" under subsection 466.151(e) of the Act.[8] Request Letter at 2. The Act does not define "character" or "general fitness" for purposes of subsection 466.151(e). Courts give undefined words their common, ordinary meaning unless a different result is clearly indicated by statute. *William Marsh Rice Univ. v. Refaey*, 459 S.W.3d 590, 593 (Tex. 2015). The ordinary meaning of "character" encompasses "the mental and moral qualities distinctive to an individual." THE NEW OXFORD AMERICAN DICTIONARY 290–91 (3d ed. 2010). "Fitness" commonly means "the quality of being suitable to fulfill a particular role or task." *Id.* at 654; *see also* TEX. OCC. CODE § 53.023(a) (directing a licensing authority, in determining a convicted person's "fitness to perform the duties" and responsibilities of a licensed occupation, to

---

[5]Sections 53.022 and 53.023 of the Occupations Code list the factors that a licensing authority must consider. *See id.* §§ 53.022 (concerning whether the conviction directly relates to the occupation at issue), .023 (involving a person's fitness to perform the duties and discharge the responsibilities of the occupation at issue).

[6]The specified offenses are: (1) an offense under article 62.001(5) of the Code of Criminal Procedure; or (2) some other offense, if the period of supervision has not ended or it ended less than five years ago, or if a conviction on that offense would automatically make the person ineligible for the license. *Id.* § 53.021(d)(1).

[7]The offenses of gambling promotion, keeping a gambling place, communicating gambling information, and possession of a gambling device, equipment, or paraphernalia are all Class A misdemeanors. TEX. PENAL CODE §§ 47.03(b), .04(c), .05(c), .06(e).

[8]You also ask about suspending or revoking an existing license under this proposal; however, the provision conditioning the Commission's issuance of a sales agent license based on a person's character and fitness is, by its own terms, applicable only to the initial issuance of the license. *See* TEX. GOV'T CODE § 466.151(e) (describing the prerequisites for the director to "issue a license").

consider such things as age, the passage of time, conduct, work activity, rehabilitative efforts, and personal recommendations). These definitions, taken together with subsection 466.151(e)'s reference to a person's "experience," suggest that subsection 466.151(e) contemplates ongoing, personal qualities of the applicant and not merely the incidence of an activity in proximity to the person's location.[9] However, specific factual circumstances could exist where there is a connection between the incidence of such activity and the applicant, such that the applicant's "character" and "fitness," as those terms are commonly understood, are called into question. Whether the Commission could consider the presence of illegal gambling activity in any given circumstance would likely depend on the facts. Accordingly, we do not reach your question regarding a formal rule that would have described such authority.[10] *See* Request Letter at 2.

To the extent the Commission can consider the presence of illegal gambling when examining an applicant's character and fitness, you ask whether the Commission is authorized to determine "whether (i) a particular activity is illegal gambling under Texas Penal Code section 47.02, or (ii) a particular machine is a gambling device under Penal Code section 47.01(4)," subject to an administrative hearing.[11] *Id.* As a state agency, the Commission has the powers expressly conferred on it by the Legislature and those implied powers that are reasonably necessary to carry out the express powers. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192–93 (Tex. 2007). The Commission is expressly authorized to make findings to support licensing decisions, including findings regarding character and fitness in connection with a license application. *See* TEX. GOV'T CODE § 466.151(e) (referring to the issuance of a license to a person "only if the director *finds that* the person's experience, character, and general fitness are such that the person's participation as a sales agent will not detract from the integrity, security, honesty, and fairness of the operation of the lottery" (emphasis added)); *see also id.* § 466.155(a) (requiring denial, suspension, or revocation of a license if the Commission "finds that" certain circumstances pertain to the applicant or sales agent). The Commission also has express authority to "conduct an investigation of" a sales agent or applicant and obtain criminal history record information from various law enforcement entities. *Id.* § 466.201(a)(1); *see also id.* § 466.203(a) (authorizing the executive director to request that the Department of Public Safety "perform a background investigation of" a sales agent or applicant). To the extent that certain activity occurring at a retail location could reflect on an applicant's character or fitness, the Commission may need to determine whether that activity would be illegal. Thus, the Commission's express authority to make findings regarding an applicant's character and fitness could form the basis from which a court could infer authority for the Commission to use its investigatory authority to determine whether a particular

---

[9]We do not mean to suggest that the conditions present at a particular location are irrelevant, as a person desiring "to operate more than one location to sell tickets must submit a separate application for each location." TEX. GOV'T CODE § 466.152(d).

[10]While the director may consider "any . . . factor" he or she believes is appropriate before issuing a license, such consideration must be pursuant to rules adopted by the Commission. *Id.* § 466.154(6).

[11]We understand your question to be limited to a licensing context and not meant for purposes of determining whether a criminal violation of the Penal Code has occurred.

activity would constitute illegal gambling, or a particular item would constitute an illegal gambling machine, under the Penal Code.

You also ask whether the Commission may broaden its regulatory definition of "professional gambler" to include "a person who conducts or allows illegal gambling activity at a proposed or existing lottery retail location." Request Letter at 2. Subsection 466.155(a)(1)(B) of the Act mandates the denial, suspension, or revocation of a license if the Commission finds that the applicant or sales agent "is or has been a professional gambler." TEX. GOV'T CODE § 466.155(a)(1)(B). The Act does not define "professional gambler." Again, courts give undefined words their common, ordinary meaning unless a different result is clearly indicated by statute. *William Marsh Rice Univ.*, 459 S.W.3d at 593. Typically, the designation of a person as engaging in an activity on a "professional" basis distinguishes him or her from one who engages in the activity on a casual or social basis. *See* THE NEW OXFORD AMERICAN DICTIONARY 1394 (3d ed. 2010) (defining a "professional" as one "engaged in a specified activity as one's main paid occupation rather than as a pastime").[12] Whether the Commission may broaden this definition without exceeding its rulemaking authority depends on whether the rule's provisions are "in harmony with the general objectives of the" statute. *Pruett v. Harris Cty. Bail Bond Bd.*, 249 S.W.3d 447, 452 (Tex. 2008) (quotation marks omitted). Harmony exists if a rule does "not impose additional burdens, conditions, or restrictions in excess of or inconsistent with relevant statutory provisions." *Harlingen Family Dentistry, P.C. v. Tex. Health & Human Servs. Comm'n*, 452 S.W.3d 479, 486 (Tex. App.—Austin 2014, pet. dism'd).

We find no clear indication in subsection 466.155(a)(1) that the Legislature intended a meaning other than the common, ordinary meaning of "professional gambler." *See* TEX. GOV'T CODE § 466.155(a)(1)(A)–(E) (prohibiting, in addition to being or having been a professional gambler, having certain convictions, being an officer or employee of the Commission or a lottery operator, or having certain family relationships with any such persons). Because a person who conducts or allows illegal gambling activity at a retail location may not be doing so as his or her main paid occupation, the Legislature did not suggest in subsection 466.155(a)(1) that the definition of "professional gambler" should encompass more than its common meaning. Thus, a court would likely conclude that a rule broadening the definition beyond its common meaning would impose additional conditions or restrictions on the scope of the term the Legislature used and therefore exceed the Commission's rulemaking authority.

Finally, we consider your question on whether

> the Commission's express function to generate revenue for the State Lottery Account (under [the Act] sections 466.351 and 466.355) impl[ies] authority for the Commission to consider the presence of illegal gambling activity at an applicant's or licensee's proposed or existing lottery retail location in deciding whether to deny, suspend,

---

[12]The Commission's current definition incorporates this common understanding. *See* 16 TEX. ADMIN. CODE § 401.153(b)(2) (Texas Lottery Commission, Qualifications for a License) (defining "professional gambler" as "a person whose profession is, or whose major source of income derives from, playing games of chance for profit").

> or revoke a lottery license, if the Commission determines the illegal activity threatens revenue generated from the lawful sale of lottery tickets[.]

Request Letter at 2. Section 466.351 of the Act provides that "all revenue received from the sale of tickets . . . shall be deposited in the state treasury" and directs the Commission to establish procedures for handling and delivering the revenue. TEX. GOV'T CODE § 466.351(a)–(e). Section 466.355 describes the state lottery account within the general revenue fund, sets forth its permissible uses and distributions, and addresses earned interest and certain fund transfers. *Id.* § 466.355(a)–(c). Although these provisions indicate an intent on the part of the Legislature that the lottery produce revenue for the State, the Commission may not imply unlimited authority to act in furtherance of that goal. Administrative agencies "may exercise only those powers the law, in clear and express statutory language, confers upon them." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002). "Courts will not imply additional authority to agencies, nor may agencies create for themselves any excess powers." *Id.* By enacting sections 466.351 and 466.355, the Legislature did not authorize the Commission to deny, suspend, or revoke a license due solely to the presence of illegal gambling activity at the licensee's retail location, and a court is unlikely to infer authority from sections 466.351 and 466.355 for the Commission to do so.

## S U M M A R Y

The language the Legislature utilized in section 53.021 of the Occupations Code does not authorize the Lottery Commission to deny, suspend, or revoke a sales agent license due to deferred adjudication for the offense of gambling. The Commission may comply with applicable statutes and consider deferred adjudication on a gambling-related offense to be a conviction if the circumstances meet the requirements of subsection 53.021(d), thereby authorizing it to deny, suspend, or revoke a license.

Whether the Commission may consider the presence of illegal gambling activity at an applicant's retail location in examining an applicant's character and fitness under subsection 466.151(e) of the State Lottery Act would depend on the facts. To the extent the Commission may consider the presence of illegal gambling activity, a court would likely conclude that the Commission's express authority to make findings under subsection 466.151(e) implies the authority to determine whether a particular activity would constitute illegal gambling, or a particular item would constitute an illegal gambling machine, under the Penal Code.

A court would likely conclude that a rule broadening the scope of the term "professional gambler" to include a person who conducts or allows illegal gambling activity at a proposed or existing lottery retail location would exceed the authority the Legislature has granted to the Commission.

A court is not likely to infer authority from sections 466.351 and 466.355 of the Act for the Commission to consider the presence of illegal activity at a retail location in deciding whether to deny, suspend, or revoke a sales agent license.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

BECKY P. CASARES
Assistant Attorney General, Opinion Committee