# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00131-CV

---

**Appellants University of Texas at Austin President Jay Hartzell; University of Texas at Austin Registrar Mark Simpson; University of Texas Dean of Students Soncia Reagins-Lilly; University of Texas Regents Kevin Paul Eltife, R. Steven Hicks, Christina Melton Crain, Jodie Lee Jiles, David J. Beck, Kelcy L. Warren, Janiece M. Longoria, Nolan Perez, and James Conrad Weaver, in their official capacities// Cross-Appellant, S. O.**

**v.**

**Appellee, S. O.// Cross-Appellees, University of Texas at Austin President Jay Hartzell; University of Texas at Austin Registrar Mark Simpson; University of Texas Dean of Students Soncia Reagins-Lilly; University of Texas Regents Kevin Paul Eltife, R. Steven Hicks, Christina Melton Crain, Jodie Lee Jiles, David J. Beck, Kelcy L. Warren, Janiece M. Longoria, Nolan Perez, and James Conrad Weaver, in their official capacities[1]**

---

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-000517, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

## O P I N I O N

S.O. sued the University of Texas at Austin President Jay Hartzell; University of Texas at Austin Registrar Mark Simpson; University of Texas Dean of Students Soncia Reagins-Lilly; and University of Texas Regents Kevin Paul Eltife, R. Steven Hicks, Christina Melton Crain, Jodie Lee Jiles, David J. Beck, Kelcy L. Warren, Janiece M. Longoria, Nolan Perez, and

---

[1] Pursuant to Rule 7.2 of the Texas Rules of Appellate Procedure, current University of Texas President Jay Hartzell has been automatically substituted for former President Gregory L. Fenves. Current University of Texas Regents Christina Melton Crain, Jodie Lee Jiles, Kelcy L. Warren, and Nolan Perez have been automatically substituted for former Regents Paul L. Foster, Jeffery D. Hildebrand, Ernest Aliseda, and Sara Martinez Tucker. Current University of Texas at Austin Registrar Mark Simpson has been automatically substituted for former Registrar Vincent Shelby Stanfield.

James Conrad Weaver, all in their official capacities (collectively, the University officials) seeking declaratory and injunctive relief prohibiting the University officials from holding an internal disciplinary proceeding for the purpose of deciding whether to revoke S.O.'s doctoral degree in organic chemistry that was conferred by the University of Texas at Austin (the University) in 2008. The University officials filed a plea to the jurisdiction, which the trial court granted in part and denied in part. In this appeal, the University officials challenge the trial court's denial of their plea to the jurisdiction seeking dismissal of S.O.'s claims that the University officials' conduct is *ultra vires* based on sovereign immunity. We will affirm.

## BACKGROUND

S.O. earned her doctoral degree in organic chemistry from the University of Texas at Austin in 2008. In 2012, the University instituted a disciplinary investigation into allegations of academic misconduct related to S.O.'s dissertation and, in 2014, attempted to revoke S.O.'s degree.[2] The University informed S.O. that her degree had been revoked on February 12, 2014.

---

[2] According to her pleadings, S.O.'s dissertation involved studying the synthesis and analysis of organic molecules. S.O. alleged that she "was required to—and did—characterize the chemical compounds in her experiments with four different tests that were required by [her graduate advisor]." S.O. alleged that "[u]ltimately, [she] did not create natural products through her proposed method, nor was she required to do so to earn her degree." S.O. alleged in her pleadings that with her graduate advisor's input and approval, she reported "the results from the synthetic routes towards the natural products in her dissertation and was awarded her degree." S.O. alleged that her dissertation research had been scrutinized at many different points in time before the University awarded her degree. S.O. alleged that her data and conclusions were supported by overlapping experiments she performed under the supervision of her graduate advisor; that she presented and defended her dissertation to a committee of five professors from the University Chemistry Department; and that her work was presumably further scrutinized by her graduate advisor when he submitted a paper based in part on her work for publication in 2011. S.O. alleged that the allegations of academic misconduct arose after a different graduate student working with S.O.'s graduate advisor in 2012 reviewed the previously published work, along with S.O's data and the data of another graduate student, and then conducted experiments that "led him to believe that parts of the work submitted [by the graduate advisor] to the journal

2

Two days later, S.O. filed suit against certain University officials (the first lawsuit) asserting that the University's procedures related to its investigation and decision regarding her degree did not comport with the minimum constitutional standards guaranteed by the Texas Constitution's due course of law provision. *See* Tex. Const. art. I, § 19. That day, S.O. and the University entered into a Rule 11 agreement specifying that the University would restore S.O.'s degree "subject to further discussions regarding additional process." The University officials then filed a plea to the jurisdiction in which they argued that, because the University had restored S.O.'s degree and initiated a student disciplinary proceeding to consider the allegations against her, S.O. had been provided all the relief she sought in her lawsuit, rendering it moot. The trial court granted the plea to the jurisdiction, and this Court affirmed. *See Orr v. The University of Tex. at Austin*, No. 03-14-00299-CV, 2015 WL 5666200, at *1 (Tex. App.—Austin Sept. 23, 2015, no pet.).

After dismissal of the first lawsuit, the University proceeded with its investigation and, in January 2016, informed S.O. that it intended to hold a disciplinary hearing concerning allegations that S.O. had violated the University's "Institutional Rules," which could subject her to disciplinary sanctions. S.O. then brought the underlying proceeding in which she sought declaratory and injunctive relief prohibiting the University officials from holding an internal disciplinary proceeding for the purpose of deciding whether to revoke her Ph.D. degree. S.O. alleged that such action was *ultra vires* conduct and a violation of her constitutional rights to due process and equal protection. S.O. also sought a temporary injunction to prevent the University from conducting any proceedings related to her Ph.D. degree pending resolution of her claims. The University officials filed a plea to the jurisdiction in which they asserted that the trial

article was somehow erroneous or otherwise inaccurate." S.O.'s pleadings allege that "once this graduate student questioned the data" in 2012, her graduate advisor brought a complaint to the University alleging that S.O. had engaged in scientific misconduct.

3

court lacked jurisdiction over S.O.'s claims because they were not ripe. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) ("The ripeness doctrine prevents premature adjudication of hypothetical or contingent situations.").

In February 2016, the trial court held a hearing on S.O.'s request for a temporary injunction and on the University officials' plea to the jurisdiction. The trial court did not at that time grant temporary injunctive relief nor did it rule on the University officials' plea. In March 2016, S.O. filed a motion for summary judgment. While that motion was pending, the University informed S.O. that it would conduct its disciplinary hearing on October 21, 2016.[3] When the University did not go forward with the proceeding on October 21, 2016, the trial court signed an order reciting that S.O.'s claims were not ripe for review and granting the University officials' plea to the jurisdiction. The trial court dismissed S.O.'s claims, and S.O. appealed the dismissal to this Court. S.O. argued that (1) the trial court erred in concluding that her request for a declaratory judgment that the University officials were acting *ultra vires* was not ripe for review and dismissing it for lack of subject matter jurisdiction, and (2) assuming the University officials' actions were not *ultra vires*, the rules the University intended to apply to the disciplinary proceeding would not provide her with adequate due process protection given the nature of the interest at risk and were, for that reason, unconstitutional. This Court held that, of the two issues presented, only the first was properly before it. *See S.O. v. University of Texas at Austin President Gregory L. Fenves*, No. 03-16-00726-CV, 2017 WL 2628072, at \*2 (Tex. App.—Austin June 15, 2017, no pet.) (mem. op.) (hereinafter "*S.O. 2017*") ("The trial court made no ruling on the merits of S.O.'s complaints regarding whether the internal disciplinary

---

[3] The hearing did not occur on October 21, 2016, and was rescheduled to take place on April 28, 2017.

4

hearing rules afford her due process."). This Court held that S.O.'s claims for a declaration under the Uniform Declaratory Judgments Act that the University officials' conduct is *ultra vires* were ripe for adjudication, *id.* at * 4, reversed the trial court's order granting the plea to the jurisdiction, and remanded the cause to the trial court.

On remand, S.O. filed an amended petition in which she sought the same declaratory relief as in her original petition.[4] The University officials filed a second plea to the jurisdiction asserting that they "have authority to conduct an internal process to determine whether the allegations of misconduct are substantiated and, if so, what sanction is proper." Thus, they argued, their conduct was not *ultra vires*, and S.O.'s *ultra vires* claims were barred by sovereign immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 369-70 (Tex. 2009) (sovereign immunity extends to state officials acting in their official capacity). The University officials also asserted that S.O.'s constitutional challenges to any future disciplinary hearing were not ripe and, to the extent her claims constituted efforts to establish the procedures applicable to a disciplinary proceeding, those claims sought to control state action and were barred by sovereign immunity. S.O. filed a motion for summary judgment asserting that she was entitled to summary judgment on her requests for eight declarations because each declaration involved only a question of law. After a hearing on the plea and the motion, the trial court signed an order granting the University officials' plea to the jurisdiction "as to declarations attempting to establish and/or challenge the procedures applicable to her disciplinary proceeding" and denying the plea "as to [S.O.'s] *ultra vires* claim regarding whether Defendants

---

[4] S.O. dropped her request for a declaration that a particular professor not be permitted to participate in any proceedings against S.O. "because of an apparent conflict" that she alleged disqualified or otherwise made that professor "ineligible to participate with fairness or impartiality."

5

are acting without authority to revoke a degree."  The trial court signed a separate order that granted S.O.'s motion for summary judgment as it pertained to her request for declaratory relief regarding the University officials' authority to revoke her degree, i.e., the *ultra vires* claims.  The University officials perfected this appeal and, in two issues, challenge the trial court's denial of their plea to the jurisdiction as to S.O.'s claims that the University officials' actions are *ultra vires*.  The University officials argue that because they are not acting *ultra vires*—i.e., because they have the authority to conduct a disciplinary hearing to determine whether to revoke S.O.'s degree—S.O.'s claims for declaratory relief as to whether they are acting without authority to revoke a degree are barred by sovereign immunity.  S.O. filed a cross-appeal challenging the trial court's ruling on two of her requests for declarations unrelated to her *ultra vires* claims and the trial court's denial of her request for attorneys' fees pursuant to the Uniform Declaratory Judgments Act.  *See* Tex. Civ. Prac. & Rem. Code § 37.009.

## DISCUSSION

### *The University Officials' Appeal*

In their second issue, the University officials argue that the trial court erred in concluding that the University lacks the legal authority to revoke a previously conferred degree and, consequently, their conduct was not *ultra vires* and S.O.'s claim was barred by sovereign immunity.  Our analysis of whether S.O.'s claim is within the trial court's jurisdiction begins with her live pleadings.  *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).  The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause—in this case, with respect to her claim of *ultra vires* acts by the University officials, allegations of fact that would demonstrate that they acted

6

without legal authority or failed to perform a purely ministerial act. *See id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). When, as here, the plea to the jurisdiction challenges the sufficiency of the pleadings rather than any of the jurisdictional facts alleged by the plaintiff, the court should make the jurisdictional determination as a matter of law based solely on the facts alleged, which are taken as true and construed liberally in favor of jurisdiction. *First-Citizens Bank & Tr. Co. v. Greater Austin Area Telecommc'ns Network*, 318 S.W.3d 560, 564 (Tex. App.—Austin 2010, no pet.); *University of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.) (citing *Miranda*, 133 S.W.3d at 226). Whether the plaintiff has met the burden is a question of law, which we review *de novo*. *Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally, taking them as true, and look to the pleader's intent. *Id.*

Sovereign immunity extends to state officials acting in their official capacity. *See Heinrich*, 284 S.W.3d at 369-70. An exception to sovereign immunity applies when a party alleges that the government officer acted "without legal authority or failed to perform a purely ministerial act." *Id.* at 372. To fall within this exception to immunity, however, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* An officer acts without legal authority if he "exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016). If the plaintiff alleges, or ultimately can prove only acts within the officer's legal authority and discretion, the claim seeks "to control state action" and is barred by sovereign immunity. *Id.*; *KEM Tex., Ltd. v. Texas Dep't of Transp.*, No. 03-08-00468-CV, 2009 WL 1811102, at *2 (Tex. App.—Austin June 26, 2009, no pet.) (mem. op.).

7

In her live pleadings, S.O. sought a declaration pursuant to the Uniform Declaratory Judgments Act that the University officials' conducting an internal proceeding to decide whether to revoke her Ph.D. degree was unauthorized.[5]  S.O. has pleaded a cognizable *ultra vires* claim if her allegations establish that the University officials' conduct exceeded the bounds of their granted legal authority.  *See Houston Belt & Terminal Ry.*, 487 S.W.3d at 158. To determine whether S.O. has asserted a valid *ultra vires* claim that invoked the district court's subject-matter jurisdiction, we construe the provisions of the relevant statute that defines the scope of the University officials' legal authority, apply them to the facts that S.O. has alleged, and ascertain whether those facts constitute acts beyond the University officials' legal authority. *See Heinrich*, 284 S.W.3d at 372-73; *Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 701 (Tex. App.—Austin 2011, no pet.).

The parties agree that the relevant statutory provision is section 65.31 of the Texas Education Code.  *See* Tex. Educ. Code § 65.31.  This section provides, in pertinent part:

> (a)  The board is authorized and directed to govern, operate, support, and maintain each of the component institutions that are now or may hereafter be included in a part of The University of Texas System.
>
> (b)  The board is authorized to prescribe for each of the component institutions courses and programs leading to such degrees as are customarily offered in outstanding American universities, and to award all such degrees.  It is the intent of the legislature that such degrees shall include baccalaureate, master's, and doctoral degrees, and their equivalents, but no new department, school, or degree-program shall be instituted without the prior approval of the Coordinating Board, Texas College and University System.

---

[5]  S.O. also alleged that the University officials are violating her constitutional rights to due process and equal protection but, as previously noted, the trial court found that it lacked subject matter jurisdiction over any requested declarations attempting to establish or challenge the procedures applicable to the disciplinary hearing and granted the plea to the jurisdiction as to those declarations.  S.O.'s constitutional claims are not before this Court.

8

(c)  The board has authority to promulgate and enforce such other rules and regulations for the operation, control, and management of the university system and the component institutions thereof as the board may deem either necessary or desirable.  The board is specifically authorized and empowered to determine and prescribe the number of students that shall be admitted to any course, department, school, college, degree-program, or institution under its governance.

*Id.* § 65.31(a), (b), (c).[6]  Section 65.31 further provides that the board may "by rule delegate a power or duty *of the board* to a committee, officer, employee, or other agent of the board." *Id.* § 65.31(g) (emphasis added).  The University officials also point to section 51.352(d)(4) of the Texas Education Code, which provides that the "governing boards"[7] of institutions of higher education shall "set campus admission standards consistent with the role and mission of similar institutions nationwide having a similar role and mission, as determined by the coordinating board."  *Id.* § 51.352(d)(4).  The parties join issue as to whether these statutes, when properly construed, authorize the University to revoke a former student's degree after it has been conferred.

Because statutory construction is at the heart of this dispute, we begin our analysis be reviewing the pertinent statutory-construction principles.  *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008).  Statutory construction presents a question of law that we review *de novo*.  *Id.*  We discern legislative intent primarily from the statute's language because

---

[6]  The term "board" refers to a board consisting of nine regents appointed by the governor, which is authorized by statute to "provide for the administration, organization, and names of the institutions and entities in The University of Texas System in such a way as will achieve the maximum operating efficiency of such institutions and entities."  *See* Tex. Educ. Code § 65.11.

[7]  A "governing board" is defined by statute as "the body charged with policy direction of any public technical institute, public junior college, public senior college or university, medical or dental unit, or other agency of higher education, including but not limited to boards of directors, boards of regents, boards of trustees, and independent school district boards insofar as they are charged with policy direction of a public junior college."  *Id.* § 61.003(9).

9

it is "'the truest manifestation' of what lawmakers intended . . . ." *Id.* (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006)). If statutory language is unambiguous, we will interpret and apply the statute according to its plain meaning unless a different meaning is apparent from the context or the plain meaning leads to absurd results. *In re Ford Motor Co.*, 442 S.W.3d 265, 280 (Tex. 2014) (orig. proceeding). In determining a statute's meaning, we construe the statute as a whole rather than construing specific provisions in isolation. *Id.* We look at the entire act in determining the Legislature's intent with respect to specific provisions. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011). Undefined terms are afforded their ordinary meaning unless a different or more precise definition is apparent from the context of the statute, *see* Tex. Gov't Code § 311.011(a); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011), because we cannot give an undefined term a meaning that is disharmonious or inconsistent with other provisions in the statute, *see Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002).

   With these principles in mind, we determine whether the relevant statutory provisions authorize the University to revoke a degree after it has been conferred on a former student. Notably, the specific statutory provision dealing with degrees, subsection 65.31(b), states that the board is authorized to "award" degrees but includes nothing that could reasonably be construed as an express grant of authority to strip a former student of a diploma or degree after it has been conferred. *See* Tex. Educ. Code § 65.31(b). Subsection 65.31(c) authorizes the board to promulgate and enforce rules and regulations for "the operation, control, and management of the university system and component institutions." *Id.* § 65.31(c). This provision empowers the board to determine and enforce the manner in which the *university system* and its *component*

10

*institutions* are operated, controlled, and managed. The provision says nothing about the board's authority to discipline a former student. Similarly, section 51.352(d)(4) addresses campus admission standards and does not speak to degrees or diplomas in any respect. *Id.* § 51.352(d)(4). A state agency has only the authority expressly provided by statute or necessarily implied to carry out the express powers the Legislature has given it. *See Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315 (Tex. 2001); *see also Public Util. Comm'n v. GTE-Sw., Inc.*, 901 S.W.2d 401, 407 (Tex. 1995) ("The agency may not, however, on a theory of necessary implication from a specific power, function, or duty expressly delegated, erect and exercise what really amounts to a new and additional power or one that contradicts the statute, no matter that the new power is viewed as being expedient for administrative purposes." (quoting *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137-38 (Tex. App.—Austin 1986, writ ref'd n.r.e.)). An agency is "a creature of the legislature and has no inherent authority." *GTE-Sy.*, 901 S.W.2d at 406.

The University officials argue that the Board of Regents' Rules and Regulations, promulgated pursuant to the statutory grant of authority in Texas Education Code subsection 65.31(c), have the same force and effect as statutes. *See Fazekas v. University of Houston*, 565 S.W.2d 299, 304 (Tex. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.) ("Since the Board of Regents of the University of Houston is authorized by statute to enact bylaws, rules and regulations necessary to the government of the University, its rules are of the same force as would be a like enactment of the legislature."). The Board of Regents Rules and Regulations direct the University to adopt institutional rules. Thus, the University officials contend that the Board of Regents' own rules and regulations serve as a statutory grant of authority to the University officials to adopt institutional rules permitting the University to discipline a former

11

student by revoking a previously conferred degree. As an initial matter, the premise that a Board of Regents rule has the same "force and effect" as a statute does not lead to the conclusion that the Board of Regents can augment its statutory grant of power, as circumscribed by the Legislature, by promulgating a rule. *See Pruett v. Harris Cnty. Bail Bond Bd.* 249 S.W.3d 447, 452 (Tex. 2008) ("An agency may adopt only such rules as are authorized by and consistent with its statutory authority." (citing *Railroad Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992)); *Harlingen Family Dentistry, P.C. v. Texas Health & Human Servs. Comm'n*, 452 S.W.3d 479, 482 (Tex. App.—Austin 2014, pet. dism'd) ("An agency's rules must comport with the agency's authorizing statute."). The Board of Regents' Rule that the University officials rely on, Board of Regents Rule 50101, does not itself purport to authorize disciplining a former student. It simply directs the University to "adopt rules and regulations concerning *student* conduct and discipline." *See* The University of Texas System Rules and Regulations of the Board of Regents, Rule 50101 (emphasis added). An institutional rule that addresses or authorizes disciplining *former* students would be beyond the scope of the very Board of Regents Rule that the University officials rely on. None of the statutes or rules relied on by the University officials constitute an express grant of authority for the University to revoke a degree after it has been conferred.

The University officials suggest that if not express, such power may be implied. *See Public Util. Comm'n of Tex. v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315 (Tex. 2001) (agency's implied powers are limited to those "necessary to carry out the express responsibilities given to it by the Legislature"). The law prohibits agencies from exercising what is effectively a new power, or a power contradictory to the statute, based merely on a claim that the power is expedient for the agency's purposes. *Id.* (citing *GTE-Sw., Inc.*, 901 S.W.2d at 407). The test is

12

whether the power to be implied is necessary for the agency to perform a function or duty that the Legislature has required of it in *express* terms. The critical question to be answered is whether the power must be implied in order to allow the agency to effectively carry out the functions that have been specifically assigned to it. *See Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192-93 (Tex. 2007) (noting that "agency's powers are limited" to those "expressly conferred by the Legislature" and those implied that are reasonably necessary to carry out agency's express responsibilities); *City Pub. Serv. Bd. v. Public Util. Comm'n*, 9 S.W.3d 868, 873-74 (Tex. App.—Austin 2000) (explaining that it is "axiomatic that" agency "has no inherent power, but only such powers as are delegated to it by the legislature in clear and *express* statutory language, together with any implied power that may be necessary . . . to perform a function or duty that the legislature has required of the agency in *express* terms" and that agency powers "must be construed narrowly when they are claimed to authorize governmental interference with established or traditional property rights"), *aff'd*, 53 S.W.3d 310, 312, 325 (Tex. 2001). We may not, therefore, imply the power to revoke a degree on the ground that it is necessary to accomplish the University's express power to award degrees unless the express grant of authority would itself be *defeated* absent an attendant authority to revoke the degree at a later date. *See GTE Sw., Inc. v. Public Util. Comm'n*, 10 S.W.3d 7, 12-13 (Tex. App.—Austin 1999, no pet.) (providing that grants of power to agencies must be construed narrowly when claimed to interfere with property rights and that power may be implied only if express powers could be defeated in absence of implied powers). The University officials do not argue that that is the case. Moreover, familiar rules of statutory construction reject such an implication. Statutory grants of power to administrative agencies must be construed narrowly when they are claimed to authorize governmental interference with established or traditional

13

property rights. *See* 3 Norman J. Singer & J.D. Shambie Singer, *Statutes & Statutory Construction*, § 65.2 (7th ed. 2008).

The University officials point to courts in other jurisdictions that have found that their state universities have the implied right to revoke a degree irrespective of statutory language and maintain that these other cases are "persuasive." This Court is not, however, tasked with surveying other jurisdictions and considering how courts in other states have resolved the question of their institutions' authority to revoke conferred degrees. Rather, our job is to discern the Legislature's intent as expressed in the plain language of the Texas Education Code. That cases from other jurisdictions are inapposite to our analysis is highlighted by jurisprudential differences in interpreting statutory authority. For example, the University officials rely heavily on *Waliga v. Board of Trustees of Kent State University*, 488 N.E.2d 850 (Ohio 1986), an Ohio Supreme Court case holding that Kent State University had the "authority and power" to revoke degrees. The court stated:

> Any action which is necessary for the proper maintenance and successful operation of a state university is authorized, *unless it is prohibited* by statute. In the event that a degree is procured through fraud, or a degree is awarded erroneously, it is certainly within the implied authority of the university to revoke it. A power of a state agency may be fairly implied from an express power where it is *reasonably related* to the duties of the agency.

*Waliga*, 488 N.E.2d at 851 (citations omitted) (emphasis added). While an Ohio court apparently may imply any powers "reasonably related" to an agency's duties, we are constrained to imply only those powers necessary for the performance of powers expressly authorized. *See Texas Mun. Power Agency*, 253 S.W.3d at 192-93; *cf. Hand v. Matchett*, 957 F.2d 791, 795-96 (10th Cir. 1992) (applying New Mexico law and relying on *Waliga* to conclude that ability to

14

revoke degrees is "necessary corollary" to power to confer those degrees).[8]  Cases from other jurisdictions interpreting different statutes and employing different rules of statutory construction are not relevant to our analysis.[9]

S.O.'s pleadings alleged an *ultra vires* claim against the University officials, specifically, that they acted without legal authority by instituting an internal proceeding to decide whether to revoke her previously conferred degree.  Thus, her claims do not implicate sovereign immunity, and the trial court properly concluded that it had subject-matter jurisdiction over her claims.  It was not error for the trial court to deny the University officials' plea to the jurisdiction as to these claims.  We overrule the University officials' second issue.

In their first issue, the University officials assert that the trial court lacked subject-matter jurisdiction because in *S.O. 2017* this Court held that the issue before the trial court— whether the University officials were acting *ultra vires*—was not justiciable until revocation of

---

[8]  While the University officials also cite to *Gati v. University of Pittsburgh of Commonwealth System of Higher Education*, 91 A.3d 723 (Pa. 2014), as persuasive authority, we note that the majority did not decide the issue of degree revocation but suggested that such relief might be sought in court in connection with litigation on the merits concerning the former student's entitlement to permanent injunctive relief.  *Gati*, 91 A.3d at 735 n.1 (Wecht, J., concurring).  *But see Goodreau v. Rector & Visitors of Univ. of Va.*, 116 F.Supp.2d 694, 703 (W.D. Va. 2000) (citing *Waliga* and concluding that power to revoke degree must be implied because, in court's view, it is reasonably necessary to effectuate power to confer degrees and regulate student discipline).

[9]  The University officials also rely on *Crook v. Baker*, 813 F.2d 88 (6th Cir. 1987), which is analytically distinguishable.  In that case, the court noted that Michigan is "one of the few states to give independent constitutional status to its universities" and the Michigan constitution provides that "the University is a separate constitutional 'body corporate known as the Regents of the University of Michigan' which Regents have 'general supervision' of the University."  Based on that unique status, the court held that the University of Michigan has the authority to revoke degrees in the absence of contraindicative constitutional, statutory, or case law.  In Texas, however, the opposite is the case—as an agency of the State, the University has only the powers expressly granted by the Legislature along with those powers that may properly be implied.

15

S.O.'s degree had occurred. That was not this Court's holding. *S.O. 2017* was an appeal from a trial court order granting the University officials' plea to the jurisdiction in which they asserted that S.O.'s claims that they were acting *ultra vires* were not ripe for review. The trial court agreed and dismissed the case for lack of subject-matter jurisdiction. The trial court's order stated that it had reserved ruling on the plea to the jurisdiction to allow for the University's internal disciplinary hearing to take place on March 4, 2016. The order states that on October 11, 2106, the parties informed the court that the hearing had not yet occurred but was scheduled to take place on October 21, 2016. The trial court informed the parties that it would rule on the plea to the jurisdiction if the hearing did not go forward as scheduled. When the parties later informed the court that the hearing would not go forward on October 21, 2016 after all, the trial court ruled on the plea to the jurisdiction. The trial court granted the plea to the jurisdiction, concluding that S.O.'s claims that the University officials were acting *ultra vires* and had violated her right to due process were not ripe for review and therefore the court lacked subject- matter jurisdiction. *See S.O.*, 2017 WL 2628072, at \*1-2.

S.O. then perfected an appeal in which she raised two issues. First, S.O. asserted that the trial court erred in concluding that her request for a declaratory judgment that the University officials were acting *ultra vires* was not ripe for review and dismissing that claim for lack of subject-matter jurisdiction. Second, S.O. asserted that, assuming the University officials' actions were not *ultra vires*, the rules the University intended to apply to the disciplinary hearing would not provide her with adequate due process protection given the nature of the interest at risk and, for that reason, were unconstitutional. This Court held that "[o]f these two issues, the only one properly before the Court is the first issue, which challenges the trial court's ruling that S.O.'s claims were not ripe." *Id.* at \*2. This Court reversed the trial court's judgment that S.O.'s

16

*ultra vires* claims were not ripe for adjudication and remanded the cause to the trial court to address the merits of the *ultra vires* claims. This Court expressly stated that the controversy between S.O. and the University officials regarding their authority to conduct an internal disciplinary proceeding to determine whether to revoke her degree was justiciable, meaning that S.O. was not required to wait until the University had revoked her degree to assert a justiciable claim that their conduct was *ultra vires*. *See id.* at *3 (holding that S.O.'s claim of *ultra vires* conduct by University officials was ripe regardless of outcome of internal disciplinary proceeding). The Court held that the outcome of the disciplinary proceeding was not relevant to whether S.O. had pleaded a valid *ultra vires* claim and, consequently, S.O. was not required to wait until the conclusion of an internal disciplinary proceeding or wait until the University revoked her degree, to seek a declaration that conducting such a proceeding would be an *ultra vires* act by the University officials. *See id.* ("The nature of the controversy, therefore, is whether the University officials' act of conducting a disciplinary proceeding to consider revoking S.O.'s degree is *ultra vires*, regardless of its outcome."). The Court identified the justiciable controversy as follows:

> A declaration concerning whether the University officials are acting with or without legal authority will resolve S.O.'s UDJA claim. A justiciable controversy therefore exists regarding whether the University officials are acting beyond their statutory authority. That controversy provides a jurisdictional basis for a UDJA action seeking a declaration regarding the University officials' authority to conduct the internal disciplinary proceeding at issue in this case.

*Id.* The trial court's judgment squarely addressed and answered that precise question, concluding and declaring that the University officials had neither the express nor implied authority to revoke S.O.'s degree and thereby affirming that their conduct was *ultra vires*.

17

In sum, this Court reversed and remanded the case to the trial court precisely because the trial court erred when it determined that it did not have subject matter jurisdiction over S.O.'s *ultra vires* claim before the University officials actually revoked her degree. Footnote four of the Court's opinion,[10] on which the University officials rely, does not state or imply that S.O.'s *ultra vires* claims are not justiciable until the University has revoked her degree. Instead, the Court was addressing the fact that S.O.'s pleadings included complaints about the manner in which the University had initially declared her degree "revoked" on February 12, 2014, and allegations that the University's procedures related to its investigation and decision regarding her degree did not comport with the minimum constitutional standards guaranteed by the Texas Constitution's due course of law provision. *See id.* at *1. Footnote four served to clarify this Court's holding on justiciability and did not purport to comment on the merits of due process complaints about the manner in which the University had conducted, or proposed to conduct in the future, any internal disciplinary proceeding that had or could result in revocation of S.O.'s degree.[11] The Court's footnote advised the parties and the trial court that any due process complaints asserted by S.O. were premature unless and until the University actually conducted proceedings that resulted in revocation of her degree. *See id.* at *3 n.4. We overrule the University officials' first issue.

---

[10] Footnote four states: "To the extent S.O.'s pleadings complain of or seek a declaration regarding the actual revocation of her degree, an event that has not occurred, that claim is not ripe." *S.O. v. University of Texas*, No. 03-16-00726-CV, 2017 WL 2628072, at *3 (Tex. App.—Austin June 15, 2017, no pet.).

[11] After the University purported to revoke S.O.'s degree in 2014, S.O. and the University officials entered into a Rule 11 Agreement specifying that the University would restore S.O.'s degree "subject to further discussions regarding additional process."

*S.O.'s Cross-Appeal*

In her first issue on cross-appeal, S.O. asserts that the trial court abused its discretion by failing to award her attorneys' fees pursuant to the Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code § 37.009. Section 37.009, addressing costs and fees under the UDJA, provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable attorney's fees as are equitable and just." *Id.* The grant or denial of attorneys' fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused that discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985). In the exercise of its discretion to award attorneys' fees in declaratory judgment actions, the trial court may award attorneys' fees to the prevailing party, may decline to award attorneys' fees to either party, or may award attorneys' fees to the nonprevailing party, regardless of which party sought declaratory judgment. *See Ochoa v. Craig*, 262 S.W.3d 29, 33 (Tex. App.—Dallas 2008, pet. denied). Whether to award or decline to award attorneys' fees is, however, entirely in the trial court's discretion, even if the party seeking fees has presented evidence that would support an attorneys' fee award should the trial court, *in its discretion*, decide to make such an award. *See Texas Mun. Power Agency v. Public Util. Comm'n*, 100 S.W.3d 510, 515 n.5 (Tex. App.—Austin 2003, pet. denied) ("Therefore, we note that the trial court retains *absolute discretion* to decline to award attorney's fees under the UDJA . . . ." (emphasis in original)). We do not disturb an award or denial of attorneys' fees under the UDJA absent a showing of abuse of discretion by the trial court. *Georgiades v. Di Ferrante*, 871 S.W.2d 878, 882 (Tex. App.—Houston [14th Dist.] 1994, writ denied). The trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

19

At the hearing on S.O's motion for attorneys' fees, the trial court stated:

> I want to discuss this a little bit because I want everybody to understand I did consider attorney fees before I issued my orders. I believe that [S.O.] has been extremely well represented throughout many years of litigation in this Court, and I don't say that lightly. I think that she has had consistent, terrific representation. Nevertheless, there was a legitimate dispute about a question of law, and I truly believe that both parties were entitled to come and seek a determination by the Court.
>
> [T]he fact that other courts and other states have looked at this certainly doesn't make it easy. It makes it perhaps even more difficult and provides certainly justification for a lot of work and a lot of time that was clearly provided in representation, and [S.O.] in what clearly was a very, very, very important issue to her and to the university as well.
>
> And so I believe both sides needed to come and do what they did, and so both sides prevailed on significant issues, and I considered that. I believe that is, indeed, equitable and just, and many factors and considerations were considered in determining that that was the most equitable result, so the request for attorney fees is respectfully denied.

On appeal, S.O. emphasized that this litigation has been ongoing for a significant period of time and that she prevailed in significant and meaningful respects. S.O. also argues that the University officials have been acting *ultra vires* and that "principles of equity do not tolerate rewarding unauthorized and illegal conduct, nor do they incentivize it." The record demonstrates that the trial court carefully considered the actions of both parties and, rather than find that the University officials had intentionally engaged in *ultra vires* conduct, the trial court noted that the legal question before it was both novel and difficult, and that both sides were justified in pursuing their competing positions. The declaratory judgment claims in this case presented issues of first impression requiring statutory interpretation. The trial court communicated its view that, having considered the circumstances, it was equitable and just for each party to bear their own attorneys' fees and costs. We cannot conclude that this constituted an abuse of the trial

court's absolute discretion to decline to award attorneys' fees pursuant to section 37.009. *See Brazoria County v. Texas Comm'n on Envtl. Quality*, 128 S.W.3d 728, 744 (Tex. App.—Austin 2004, no pet.). We overrule S.O.'s first issue on cross-appeal.

In her second issue on cross-appeal, S.O. asserts that the trial court erred by denying her motion for summary judgment on the two following requests for declaratory relief:

> **Declaration IV:** the 2003 University Catalog in effect when S.O. was a graduate student constitutes a binding contract with the University.
>
> **Declaration V:** for disciplinary proceedings against S.O., the University may not enforce any rules amended, modified, or adopted after S.O. graduated from the University, as doing so would be unconstitutional and contrary to Texas law.

In her brief, S.O. states that the trial court denied her request for these declarations in a February 11, 2019 summary-judgment order. A review of the court's order, however, makes it plain that the trial court did not dispose of S.O.'s request for these two declarations on summary judgment but, rather, determined that it did not have subject-matter jurisdiction to address the merits of the requested declarations. Specifically, the summary-judgment order states "As set forth in a separate Order of this Court, the Court lacks jurisdiction to grant relief under requests for Declarations II-VIII." The separate order referred to is the trial court's order on the University officials' plea to the jurisdiction. The court's plea-to-the-jurisdiction order stated that "the Court is of the opinion that Defendants' Second Plea to the Jurisdiction should be denied *as to the claims which fall under the ultra vires exception to sovereign immunity* but granted as to all other claims for relief." (Emphasis added). Thus, the trial court determined that S.O.'s requests for Declarations IV and V were barred by sovereign immunity. S.O.'s briefing does not address the trial court's conclusion that these requests for declaratory relief are barred by sovereign immunity. Instead, she addresses only the merits of her requested relief, which she

characterizes as requests for declarations about "which is the governing contract between her and [the University]." The UDJA does not enlarge the trial court's jurisdiction but is "merely a procedural device for deciding cases already within a court's jurisdiction." *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011). Accordingly, for the trial court to have jurisdiction, the underlying action must be one for which immunity has expressly been waived. *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621-22 (Tex. 2011). Although the UDJA waives sovereign immunity in particular cases, S.O.'s request for a declaration regarding an alleged contract between the parties does not fall within the scope of those express waivers. For example, the state may be a proper party to a declaratory judgment action that challenges the validity of a statute. *Heinrich*, 284 S.W.3d at 373 n.6 (citing Tex. Civ. Prac. & Rem. Code § 37.006(b)); *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994). But S.O. is not challenging the validity of a statute. Instead, she is seeking a declaration that the University is bound by a particular contract with her. *See Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 120-21 (Tex. App.—2007, no pet.) (suits seeking to enforce performance under contract or to impose contractual liabilities are suits against the state barred by sovereign immunity). S.O. does not direct us to any provision of the UDJA or any other provision that expressly waives immunity for her claims. The trial court properly determined that S.O.'s request for Declarations IV and V were barred by sovereign immunity and did not err by dismissing them for lack of subject-matter jurisdiction. We overrule S.O.'s second issue on cross-appeal.

**CONCLUSION**

Having overruled the University officials' two appellate issues and having also overruled S.O.'s two issues on cross-appeal, we affirm the trial court's judgment.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly
  Concurring and Dissenting Opinion by Justice Kelly

Affirmed

Filed:   September 4, 2020